FILED
2012 May-16 PM 12:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TOMMY CLAY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:11-CV-4245-KOB** |
| | ] | |
| **DOUBLE E COMPANY, LLC,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**MEMORANDUM OPINION**

This matter comes before the court on the Defendant's Motion to Dismiss and Compel Arbitration (doc. 5). The parties have fully briefed the motion (*see* docs. 8 & 9). For the reasons stated below, the court finds that the defendant's motion to compel arbitration is due to be granted, although the court finds that the arbitration agreement's six month limitation to demand arbitration is due to be stricken.

**INTRODUCTION**

Plaintiff Tommy Clay began working for Defendant Double E Company in November, 2009 as a sales representative, covering Double E's Alabama sales territory. When Mr. Clay first applied for employment with Double E, he signed an application form that included a provision on arbitration. This provision advised Mr. Clay that he was agreeing to resolve federal employment disputes that occurred during the course of his employment "exclusively by and through final and binding private arbitration" and that, should he accept employment with Double E, he would be subject to an arbitration agreement.

Once he began working for Double E, Mr. Clay signed the separate arbitration agreement

referred to in his application for employment. The arbitration agreement explained Double E's dispute resolution procedure for resolving "legal disputes," a term the agreement defined as

> a claim by the employee of the Double E Company, LLC or one of its agents [*sic*] has breached a legal obligation to the employee by violating a statute, regulation, or common law obligation applicable in the employment relationship. Specific examples include, but are not limited to, allegations of unlawful termination . . . [and] claims of age or handicap discrimination . . . .

Ex. 2 to Def. Mot. to Dismiss and Compel Arb. at 1.

The arbitration agreement also explained Double E's three step dispute resolution process. Step One begins with an informal resolution process with an employee's supervisor. If informal resolution fails, Step Two requires the employee to reduce the complaint to writing and submit it to Human Resources. Finally, Step Three provides that, if the employee's complaint involves a legal dispute and he and the company are not able to resolve the dispute at Step Two, then either the employee or Double E *may* submit the claim to arbitration. Step Three explains that a demand for arbitration *must* be made within six months of the event giving rise to the dispute. Double E emphasizes this requirement by underlining this sentence, the only sentence so emphasized in the agreement. Notwithstanding Double E's requirement that employees follow the dispute resolution process, the arbitration agreement states that Double E's policy "does not prevent an employee from filing a charge of employment discrimination with the [EEOC] . . ., but it does require that those claims be decided by an arbitrator rather than in an agency hearing or in a court." Ex. 2 to Def. Mot. to Dismiss and Compel Arb. at 2.

In March, 2010, Mr. Clay began developing health issues that he claimed made it difficult to fulfill his regular work schedule and that caused his work performance to suffer. In June, 2010, Mr. Clay was diagnosed with hypogonadism and low testosterone. Mr. Clay notified Double E

about his condition and provided Double E with the doctor's analysis of his condition on July 8, 2010. Double E nevertheless terminated Mr. Clay on July 20, 2010, for failure to perform his job duties.

After his termination, Mr. Clay did not submit a demand for arbitration, but instead filed a timely charge with the EEOC. He received his right to sue notice on September 22, 2011, and filed this lawsuit on December 19, 2011. On February 3, 2012, Double E's counsel notified Mr. Clay's counsel by letter that Mr. Clay's claim was subject to the arbitration agreement, and requested that Mr. Clay dismiss his lawsuit. Mr. Clay responded that he did not intend to challenge the existence of the arbitration agreement, but, instead, to contest the enforceability of the six month limitations period in the arbitration agreement for making an arbitration demand. Double E then filed this motion to dismiss and compel arbitration.

**DISCUSSION**

The Federal Arbitration Act ("FAA") provides that covered arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and reflects "a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA, thus, "requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Courts must enforce arbitration agreements according to their terms, "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a

contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

Mr. Clay does not dispute that he validly executed the agreement or that his claims fall within the scope of the agreement. Instead, he argues that the six month limitation period is unenforceable as abrogating his statutory rights and that, accordingly, the entire arbitration agreement is unenforceable.

From the outset, the court notes that the Supreme Court has upheld arbitration agreements where the parties agree to arbitrate statutory claims, even employment discrimination claims. The Court has explained that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 628 (1985); *see also id.* at 637 ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."). The Supreme Court, recognizing the liberal federal policy favoring arbitration agreements, has concluded that federal statutory claims may clearly be the subject of an arbitration agreement, and that such arbitration agreements may be enforced under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The Court acknowledged that "all statutory claims may not be appropriate for arbitration," but nevertheless concluded that parties bargaining to arbitrate should be held to their promise unless Congress itself "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 628). Under this rationale, the Court held that ADEA claims were arbitrable because the plaintiff had not met his

burden of showing that Congress intended to preclude arbitration of ADEA claims. *Gilmer*, 500 U.S. at 35. Neither Mr. Clay nor Double E has cited a case holding that Congress intended to preclude a waiver of judicial remedies for the statutory rights granted by the ADA, nor has Mr. Clay argued that Congress intended to preclude arbitration of ADA claims.

Without any authority that Congress intended to preclude arbitration of ADA claims, Mr. Clay focuses on the six month limitation clause as foreclosing his statutory rights, and cites cases holding that limitation of action clauses in employment contracts are unenforceable against a plaintiff bringing a claim under Title VII or the ADA. *See O'Phelan v. Fed. Express Corp.*, 2005 U.S. Dist. LEXIS 21531, at *15 (N.D. Ill. Sept. 27, 2005) (finding a six month limit *in which to file suit* unenforceable against the plaintiff's Title VII claim); *Lewis v. Harper Hospital*, 241 F. Supp. 2d 769, 771–72 (E.D. Mich. 2002) (finding a six month limit *in which to file suit* unenforceable against the plaintiff's Title VII claim); *Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437–38 (W.D. Mich. 1996) (finding a six month limit *in which to file suit* unenforceable against the plaintiff's ADA claim).

In these cases, the contracts—which were not arbitration agreements—prohibited the plaintiffs *from filing suit* after six months had elapsed from the event giving rise to the cause of action. *See*, *e.g.*, *Lewis*, 241 F. Supp. 2d at 770 ("Plaintiff signed an Acknowledgment and Acceptance of employment form . . . [that] reads: 'I agree that I shall not commence any action . . . relating to my employment or the termination thereof more than six months after the event complained of and I voluntarily waive any statue [sic] of limitations to the contrary.'"). In finding limitation-on-action clauses unenforceable in these cases, these courts explained that the plaintiffs could not file suit until they exhausted the EEOC administrative process, a process that

almost always takes longer than six months. Thus, these courts concluded that because the prerequisite administrative procedures would very likely prevent a plaintiff from filing suit until after six months had elapsed, these limitation-on-action clauses abrogated a plaintiff's statutory rights and were, therefore, unenforceable. *See Lewis*, 241 F. Supp. 2d at 772; *Salisbury*, 938 F. Supp. at 437–38.

These cases do not apply here because the arbitration agreement, on its own, does not abrogate Mr. Clay's statutory rights under the ADA. *See Mitsubishi*, 473 U.S. at 628 (explaining that a plaintiff does not forego his statutory rights by agreeing to submit them to arbitration). In fact, the district court in *Lewis* acknowledged that an employee agreeing to submit his claims to arbitration was distinct from an employee agreeing to *de facto* abrogate his right to sue under a federal employment statute. *See Lewis*, 241 F. Supp. 2d at 772 ("While arbitration ultimately leads to resolution of the complaint, the effect of the [six month] limitation clause at issue could ultimately leave Plaintiff without redress given the EEOC filing requirements."). The arbitration agreement allows a forum for Mr. Clay to bring his dispute, and does not require him to file an EEOC charge to initiate arbitration.

The distinction between cases such as *Lewis* and this case becomes clearer in light of other cases holding limitation-on-action clauses *enforceable* in situations where the limitation did not abrogate a plaintiff's right. *See*, *e.g.*, *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1206 (finding a six month limitation on action clause valid under Illinois law and not contrary to federal policy when applied to a § 1981 claim because Congress did not provide for a statute of limitations on § 1981 claims); *Pilitz v. Bluegreen Corporation*, 2011 U.S. Dist. LEXIS 86042, at *17–18 (M.D. Fla. Aug. 4, 2011) (upholding a ninety-day limitation to demand arbitration in an

ADEA case because "arbitration clauses limiting the applicable statute of limitations are repeatedly upheld by Florida courts"). Although many of these courts applied state law unconscionability doctrine to determine that the limitations were valid, *see Solani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042–45 (9th Cir. 2001) (upholding a six month limitation on action clause after applying California's unconscionability doctrine), Mr. Clay has not argued unconscionability under any state law doctrine, and has not even argued which state law this court should use in interpreting or evaluating the contract.

Notwithstanding Mr. Clay's misplaced reliance on *O'Phelan* and similar cases, and his failure to advance other state law arguments for striking the six month limitation as unenforceable, the court finds that he has raised an issue as to the enforceability of this provision. The court, upon review of the arbitration agreement, has concerns about some of the provisions in the agreement, particularly when viewed through the lens of a legally unsophisticated employee. Specifically, the court is concerned about the provision preserving the employee's right to file with the EEOC at the same time that an arbitration demand must be made prior to a reasonable time for the completion of the EEOC process.

The provision allowing the employee to file with the EEOC creates an inconsistency on the face of the agreement, and is superfluous if the employee is required to proceed directly to arbitration within six months. An employee who exercises that preserved right to file with the EEOC becomes trapped by the agreement. Any benefit from his filing the charge would not accrue until well after six months from the date that he filed, at which point his demand for arbitration would, presumably, be untimely. But if he makes a timely demand for arbitration, he loses any benefit from filing with the EEOC, as is his right under the arbitration agreement. This

conflict, and the phrasing in step three of the dispute resolution process stating that an employee *may* demand arbitration, introduces ambiguity as to whether the six month limitation will prevent an employee who files with the EEOC from making a timely demand for arbitration upon completion of the administrative process.

The court, therefore, finds the provision requiring employees to demand arbitration within six months to be unenforceable when they have exercised their preserved right to file a claim with the EEOC, particularly under the well-established doctrine of *contra preferentem* where ambiguities are construed against the drafter. Double E could have made clear to employees that engaging in the statutory right of filing with the EEOC would be tantamount to giving up any right of having the case resolved in arbitration—the only forum in which Double E presumably will participate.

Although the court finds the six month limitation unenforceable in this situation, the court nevertheless rejects Mr. Clay's argument that the arbitration agreement is unenforceable in its entirety. Indeed, the arbitration agreement contemplates the possibility that a court may strike the six month limitation, stating that in such a scenario "the court should remove that limitation or restriction and direct that arbitration proceed." Ex. 2 to Def. Mot. to Dismiss and Compel Arb. at 4. Because Mr. Clay has not argued how the arbitral forum would otherwise prevent him from vindicating his statutory cause of action, the court also rejects his argument that "enforcement of the arbitration agreement would foreclose his statutory rights." Accordingly, the court finds that the case is referable to arbitration, with the six month limitation stricken from the agreement in this case.

**CONCLUSION**

For the reasons stated above, the court GRANTS Double E's motion, and ORDERS the parties to arbitration pursuant to the arbitration agreement, but STRIKES the six month limitation from the agreement as unenforceable in this case. This case is DISMISSED WITHOUT PREJUDICE, to reopen if necessary pending the completion of arbitration. The court will simultaneously enter an order to this effect.

DONE and ORDERED this16th day of May, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE